IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| COLONY INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action File No.: |
| | ) | 1:09-CV-1479-JOF |
| FRANK VELLUCCI, | ) | |
| HI TIMES, INC. d/b/a MOODY | ) | |
| MACHINERY SALES a/k/a MOODY | ) | |
| MACHINERY SALES, INC., FIBER | ) | |
| PROCESSING PARTS | ) | |
| INTERNATIONAL, LLC, MTLS | ) | |
| INTERNATIONAL, INC., ECS, INC., | ) | |
| BINNACLE CONTRACTORS, INC., | ) | |
| CHAD MILLER, STUART JACKSON, | ) | |
| RAY EURY, and A.V. MOODY, JR., | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED PETITION FOR DECLARATORY JUDGMENT

COMES NOW Colony Insurance Company ("Colony"), Plaintiff in the above-styled action, by and through its undersigned counsel of record, and amends its Petition for Declaratory Judgment against the above-named Defendants as follows:

−1−

## PARTIES

1.     Plaintiff Colony is a foreign corporation with its principal place of business in Richmond, Virginia and is thus a citizen of Virginia.

2.     Defendant Frank Vellucci is a resident of Plymouth, Indiana.

3.     Defendant Hi Times, Inc. d/b/a Moody Machinery Sales a/k/a Moody Machinery Sales, Inc. ("Moody") is a foreign corporation with its principal place of business in Piedmont, South Carolina.

4.     At all times material hereto, Defendant MTLS International, Inc. ("MTLS") was a Georgia corporation with its principal place of business located in Marietta, Georgia and was thus a Georgia citizen.  MTLS was engaged in the business of manufacturing carbon fibers.  MTLS was administratively dissolved on May 16, 2008.

5.     Upon information and belief, Defendant ECS, Inc. ("ECS") is a South Carolina corporation.  At all times material hereto, ECS was a foreign corporation with its principal place of business in Greenville, South Carolina.

6.     Fiber Processing Parts International, LLC ("Fiber") is a foreign corporation with its principal place of business in Simpsonville, South Carolina.

7.    Defendant Binnacle Industrial Contractors, Inc. ("Binnacle") is a foreign corporation with its principal place of business in Newmarket, New Hampshire.

8.    Defendant Chad Miller is a resident of Marietta, Georgia.

9.    Defendant Stuart Jackson is a resident of Duncan, South Carolina.

10.    Defendant Ray Eury is a resident of Charlotte, North Carolina.

11.    Defendant A.V. Moody, Jr. is a resident of Piedmont, South Carolina.

## JURISDICTION

12.    The Court has jurisdiction over this action pursuant to 28 United States Code Section 1332 because Plaintiff is a citizen of a different state than all other Defendants, and the matter in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000.00).

13.    The Court further has jurisdiction pursuant to 28 U. S.C. § 2201, in that Colony is seeking a declaration from this Court regarding the parties' rights and obligations with respect to a policy of commercial general liability ("CGL") insurance issued by Colony, Policy Number GL114343, (the "Policy). (A certified copy of the Policy is attached hereto as Exhibit "A.")  The Court is vested,

pursuant to 28 U.S.C. § 2201, with the power to declare the rights and obligations of the parties hereto, and to provide such other relief as may be necessary.

## VENUE

14.    Venue is laid in this District pursuant to 28 U.S.C. § 1391 by virtue of the fact that this action seeks the interpretation of a CGL policy of insurance issued in the State of Georgia to named insured MTLS, a Georgia citizen.   The Policy Declarations state that the mailing address of insured was 1325 Chastain Rd, Bldg. 200, Kennesaw, Georgia 30144, and the Policy was delivered to MTLS at its address in Kennesaw, Georgia.

## PRELIMINARY ALLEGATIONS

### The Underlying Lawsuit

15.    The owner, president and registered agent of MTLS, Chad Miller ("Miller"), is a material science engineer with a specialty in carbon fiber technology.

16.    Aspen Aerogel ("Aspen"), a Delaware corporation with its principal place of business located in Northborough, Massachusetts, manufactures insulation for piping utilized in the petroleum industry and needed to minimize the size and/or thickness of the insulation while maintaining its thermal properties.

–4–

17.    Miller is an expert of piping insulation and had developed technology that would assist Aerogel redeveloping its insulation.

18.    In or about 2004, Aspen retained Miller to provide expertise in the design and supervision of the installation of certain equipment, including one piece of equipment known as a Rando Open Blender ("ROB") web forming machine, at a manufacturing facility in Lincoln, Rhode Island.

19.    Based upon Miller's recommendation, Aspen hired Frank Vellucci ("Vellucci") as the prospective plant manager for the Rhode Island facility.  As the prospective plant manager, Vellucci was involved in the build-out and installation of the ROB.

20.    Purportedly at the direction or upon the advice of Miller and/or MTLS, Aspen purchased the ROB from Moody.

21.    The ROB began to experience problems with humidity control, but according to Miller, Aspen would not pay for the necessary humidity control equipment.

22.    On September 28, 2004, the ROB malfunctioned allegedly as a result of the humidity problems.  Vellucci stopped the machine, crawled underneath it, pushed several safety guards out of the way, and reached into the machine to

remove sticking fibers that were causing the machine to malfunction. In the process, the blades of ROB caught and degloved Vellucci's left arm and hand up to the top of the forearm.

23.     Vellucci subsequently filed suit against MTLS, among others, in the Superior Court of Rhode Island ("Underlying Lawsuit") seeking damages for the aforementioned injuries. The Underlying Lawsuit, styled *Frank Vellucci v. Hi times, Inc. et al.,* Civil Action File No.: PC07-3286, remains pending the Rhode Island Superior Court. (A true and accurate copy of the Complaint and Amended Complaint in the Underlying Lawsuit are attached hereto as Exhibits "B" and "C" respectively.)

### Defense of the Underlying Lawsuit

24.     Pursuant to the terms of the Policy, Colony retained counsel to defend MTLS in the Underlying Lawsuit.

25.     Counsel for MTLS filed an Answer and has conducted discovery on MTLS's behalf.

26.     On May 11, 2009, Colony transmitted a Reservation of Rights letter to MTLS advising that Colony was reserving its right to contest coverage and seek a judicial declaration in regard to what, if any, coverage obligation it owed to MTLS

by virtue of the "Professional Services" exclusion contained in its policy. (A true and accurate copy of the Reservation of Rights letter is attached hereto as Exhibit "D.")

## The Policy

27.    Colony issued a CGL insurance policy to named insured MTLS, policy number GL114343, effective June 18, 2004 to June 18, 2005 (the "Policy"). The Policy includes a $1 million per occurrence limit and $2 million aggregate limit for bodily injuries arising from a single accident. (Exhibit A.)

28.    The Policy states, pertinent part:

**SECTION I - COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)    The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

(2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgment or settlements under Coverages **A** and **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

. . . .

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1.    Insuring Agreement

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1)    the amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

(2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the

–8–

payment of judgment or settlements under Coverages **A** and **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**

    b.    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

. . . .

6.    Representations
By accepting this policy, you agree:

    a.    The statements in the Declarations are accurate and complete;

    b.    Those statements are based upon representations you made to us; and

    c.    We have issued this policy in reliance upon your representations.

. . . .

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY

**MISCELLANEOUS EXCLUSIONS ENDORSEMENT**

This endorsement modifies insurance provided under the following:

–9–

COMMERCIAL GENERAL LIABILITY COVERAGE PART

B.    **SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2**. **Exclusions** and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2.** Exclusions are amended and the following are added:

. . . .

**EXCLUSION - PROFESSIONAL SERVICES**

This insurance does not apply to "bodily injury," or "property damage" or "personal and advertising injury" arising out of or resulting from the rendering or failure to render any "professional service" except by endorsement to this policy and then only to the extent of such endorsement.

"Professional service" means:
. . . .

**(3)**    Engineering services, including related supervisory or inspection services;
. . . .

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

(Exhibit A.)

## COUNT ONE
### ("Professional Services" Exclusion)

29.    Colony incorporates Paragraphs 1 through 28, as though set forth in full herein.

30.    Pursuant to the terms of the "Professional Services" exclusion contained in the Miscellaneous Exclusions Endorsement, Colony's Policy excludes coverage for "'bodily injury' . . .  arising out of or resulting from the rendering or failure to render any 'professional service' [meaning] . . . [e]ngineering services, including related supervisory or inspection services."

31.    The consulting work that MTLS was performing for Aspen at all times relevant to this action and to the Underlying Lawsuit constitutes "professional services" as the term is defined in the Miscellaneous Exclusions Endorsement.

32.    Vellucci contends that the bodily injuries he sustained on September 28, 2004 were the direct and proximate result of MTLS's negligence in performing its professional services.

33.    An actual controversy exists in that Colony contends that under the "Professional Services" exclusion of the Policy, MTLS is afforded no coverage for any damages or claims arising out of or connected to the Underlying Lawsuit or

settlement thereof.    Colony, accordingly, has no duty to provide any further coverage, indemnification or defense to MTLS in the Underlying Lawsuit.

34.    MTLS, on the other hand, contends that it is entitled to coverage under the Policy.

35.    Under 28 U.S.C. § 2201, Colony, accordingly, seeks a judicial declaration of the parties' respective rights and duties under the Policy.

## RELIEF REQUESTED

WHEREFORE, Colony respectfully requests that the Court enter judgment declaring the rights and obligations of the parties as follows:

(a)    That Colony has no duty to provide coverage, a defense or indemnify MTLS for all, or any portion of, claims arising from the September 28, 2004 incident that is the subject of the Underlying Lawsuit;

(b)    That the claims against MTLS contained in the Underlying Suit are excluded from coverage under the Policy;

(c)    That Colony be afforded trial by jury; and

(d)    For such other and further relief as the Court may deem proper, together with costs, attorneys' fees and disbursements of this action.

Respectfully submitted, this 22nd day of July, 2009.

CARLOCK, COPELAND & STAIR, LLP

/s/ *Erica L. Parsons*
FRED M. VALZ, III
Georgia State Bar No. 723379
Email: fvalz@carlockcopeland.com
ERICA L. PARSONS
Georgia State Bar No. 100152
Email: eparsons@carlockcopeland.com

2600 Marquis Two Tower
285 Peachtree Center Avenue
Atlanta, Georgia 30303
(404) 522-8220

−13−

2705106v.1